**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000667
12-MAR-2020
07:48 AM**

NO. CAAP-16-0000667

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ALEXANDER & BALDWIN, LLC, a Hawaii limited liability company,
Plaintiff-Appellee,
v.
NELSON ARMITAGE; WAYNE ARMITAGE; FREDERICK TORRES-PESTANA
aka RIKI TORRES-PESTANA; KINGDOM OF HAWAIʻI, also known as
REINSTATED LAWFUL HAWAIIAN GOVERNMENT, also known as
LAWFUL HAWAIIAN GOVERNMENT, also known as REINSTATED HAWAIIAN
GOVERNMENT, also known as REINSTATED HAWAIIAN NATION, also known
as REINSTATED HAWAIIAN KINGDOM, an unincorporated association;
Defendants-Appellants,
and
ROBERT ARMITAGE aka BOBBY ARMITAGE; JAMES AKAHI also known as
AKAHI NUI aka MAJESTY AKAHI NUI aka JAMES AKAHI NUI aka ROYAL
MAJESTY AKAHI NUI, Executor/Trustee of the Kingdom of Hawaii
Nation Ministry Trust; KINGDOM OF HAWAIʻI NATION MINISTRY TRUST,
also known as KINGDOM OF HAWAII, an unincorporated association,
Defendants-Appellees,
and
JOHN DOES 1-20, JANE DOES 1-20,
DOE PARTNERSHIPS 1-20, DOE CORPORATIONS 1-20,
DOE GOVERNMENTAL ENTITIES 1-20, and DOE ENTITIES 1-20,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 13-1-1065)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Chan and Wadsworth, JJ.)

In this appeal arising out of an alleged trespass to
land, Defendant-Appellant Nelson Armitage appeals from the

Amended Final Judgment entered in favor of Plaintiff-Appellee Alexander & Baldwin, LLC, a Hawai'i Limited Liability Company (A&B) on September 16, 2016, in the Circuit Court of the Second Circuit (circuit court).[1]

On appeal, Nelson Armitage raises the following points of error: (1) Judge Loo erred when she failed to "certify familiarity" with the underlying action in accordance with Hawai'i Rules of Civil Procedure (HRCP) Rule 63 (2000) and held a hearing despite having a conflict of interest in the matter; (2) Judge Loo abused her discretion when she granted A&B's request for an injunction after recusing herself; (3) Judge Loo erred in issuing a favorable ruling for A&B despite having a conflict of interest in the matter; (4) Judge Cardoza erred when he failed to "certify familiarity" with the underlying action in accordance with HRCP Rule 63 prior to accepting the case; (5) Judge Cardoza abused his discretion when he prevented Nelson Armitage from challenging the validity of A&B's evidence regarding ownership of the contested parcel; and (6) Judge Cardoza erred in granting A&B's motion for summary judgment because A&B failed to meet its burden of proof regarding ownership.

As a preliminary matter, we note that the notice of appeal purports to assert an appeal on behalf of Defendants-Appellants Nelson Armitage; Wayne Armitage; Frederick Torres-Pestana aka Riki Torres-Pestana; and Kingdom of Hawai'i, also known as Reinstated Lawful Hawaiian Government, also known as Lawful Hawaiian Government, also known as Reinstated Hawaiian Government, also known as Reinstated Hawaiian Nation, also known as Reinstated Hawaiian Kingdom, an unincorporated association (Reinstated Hawaiian Nation). Wayne Armitage and Frederick Torres-Pestana signed the notice of appeal on their own behalf as

---

[1] This case was initially presided over by the Honorable Peter T. Cahill (Judge Cahill) who recused himself on June 10, 2014. The Honorable Rhonda I.L. Loo (Judge Loo) then presided over this case until her recusal on September 2, 2014. The Honorable Joseph E. Cardoza (Judge Cardoza) presided for the remainder of the case, including the Amended Final Judgment.

*pro se* defendants. Nelson Armitage signed the notice of appeal both on his own behalf as a defendant *pro se* and also as "Foreign Minister." Non-Party/Appellant Henry Noa signed the notice of appeal as "Prime Minister" purportedly representing Reinstated Hawaiian Nation. Neither Nelson Armitage nor Henry Noa is licensed to practice law in the State of Hawai'i. Under HRS § 605-2 (2016) and § 605-14 (2016), persons who are not licensed to practice law in Hawai'i "are not permitted to act as 'attorneys' and represent other natural persons in their causes." Oahu Plumbing & Sheet Metal, Ltd. v. Kona Constr., Inc., 60 Haw. 372, 377, 590 P.2d 570, 573 (1979) (emphasis in original). "By the same token, non-attorney agents are not allowed to represent corporations in litigation, for a wholly unintended exception to the rules against unauthorized practice of law would otherwise result." Id. at 377, 590 P.2d at 574. The same rules apply to unincorporated entities, such as Reinstated Hawaiian Nation. See Free Church of Tonga-Kona v. Ekalesia Ho'ole Pope O Kekaha, No. CAAP-19-0000005, 2019 WL 2285359, at *2 (Haw. App. May 28, 2019) (SDO). Therefore, neither Nelson Armitage nor Henry Noa was entitled to assert an appeal on behalf of Reinstated Hawaiian Nation. Accordingly, the notice of appeal is not valid with respect to Reinstated Hawaiian Nation, and Reinstated Hawaiian Nation is not a party to this appeal.

Moreover, the amended opening brief, like the initial opening brief, was purportedly filed on behalf of Reinstated Hawaiian Nation, Nelson Armitage, Wayne Armitage, Robert Armitage, and Frederick Torres-Pestana. However, the amended opening brief was only signed by Henry Noa, purportedly representing Reinstated Hawaiian Nation, and Nelson Armitage, on his own behalf and also as "Minister of Foreign Affairs" purportedly representing Reinstated Hawaiian Nation. Neither Wayne Armitage, nor Robert Armitage, nor Fredrick Torres-Pestana signed the brief. Henry Noa is not a party in this case. Furthermore, as stated above, neither Henry Noa nor Nelson

3

Armitage is authorized to represent any other person or entity in this appeal. Thus, Nelson Armitage (Armitage) is the only appellant.

(1) Armitage's first contention on appeal is that: (A) Judge Loo committed reversible error when she failed to "certify familiarity" with the underlying action in accordance with HRCP Rule 63 before granting A&B's August 27, 2014, Ex Parte Motion for a Temporary Restraining Order (Motion for TRO) and taking any other actions in the case, and (B) Judge Loo had a conflict of interest at the time she granted the temporary restraining order.

(A) Armitage first contends that Judge Loo was required to formally and explicitly "certify familiarity" with the case, per HRCP Rule 63, before taking any action in the case.

HRCP Rule 63 covers situations where a judge takes over a case for a prior judge during a trial or hearing, providing specifically that:

> If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a hearing or trial without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

HRCP Rule 63 was amended in 1999 to more closely track the language of Federal Rules of Civil Procedure (FRCP) Rule 63 (2007). While no Hawai'i cases have addressed the modern version of the rule, the Hawai'i Supreme Court has held that where an HRCP Rule was "patterned . . . after an equivalent rule within the FRCP, interpretations of the rule by the federal courts are deemed to be highly persuasive." Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 251-52, 948 P.2d 1055, 1092-93 (1997) (internal quotations marks omitted).

In Canseco v. U.S., 97 F.3d 1224, 1227 (9th Cir. 1996), the United States Court of Appeals for the Ninth Circuit held that a successor judge was required to certify familiarity with

4

the record before deciding a motion for new trial following a judgment entered by the previous judge after a bench trial. The Ninth Circuit explained:

> To certify her familiarity with the record, the successor district judge will have to read and consider all relevant portions of the record. If, by reviewing the record, the judge determines there is sufficient evidence to support the findings actually made, or to support other necessary findings, and such evidence does not depend upon the testimony of a witness whose credibility is in question, she may conclude that the findings are supported by the evidence, or make the necessary findings, and deny the motion for a new trial, insofar as the motion challenges the sufficiency of the evidence. In the event the sufficiency of the evidence depends upon the credibility of a witness whose credibility is in question, and that credibility cannot be determined from the record, the successor judge will have to recall the witness, if the witness is available without undue burden, and make her own credibility determination.

Id. (footnote omitted). The Ninth Circuit also noted that, in contrast, "[t]o certify familiarity with the record as a prerequisite to ruling on a new trial motion which challenges the district court's interpretation and application of the law, the successor judge's review of the record would likely be less extensive." Id. at 1227 n.2. Thus, a successor judge need only certify his or her familiarity with the portions of the record that are relevant to the issue before him or her. Further, a successor judge's certification need not be express; evidence demonstrating that the successor judge became familiar with the relevant portions of the record is sufficient. Mergentime Corp. v. Washington Metro. Area Transit Auth., 166 F.3d 1257, 1265 (D.C. Cir. 1999).

In the present case, Judge Loo's order granting A&B's Motion for TRO, while not expressly citing HRCP Rule 63, stated that Judge Loo "considered the entire record on file in the above-entitled matter." Accordingly, and in consonance with the persuasive federal authority cited above, Judge Loo was not required to explicitly certify familiarity with the case before ruling on A&B's Motion for TRO. Regardless, the record reflects that Judge Loo did in fact consider all relevant portions of the

record.

(B) Armitage contends that Judge Loo committed reversible error in granting the Motion for TRO despite her conflict of interest. Judge Loo entered the Temporary Restraining Order on August 27, 2014. Judge Loo informed the parties of her conflict of interest at a status conference held on August 29, 2014. Thereafter, on September 2, 2014, Judge Loo entered an order disqualifying herself from further presiding in the case, due to her ownership of A&B stock, pursuant to HRS § 601-7. We note that disqualification due to a fully-disclosed pecuniary interest may be waived by parties, but there was no waiver in this case. See HRS § 601-7(a) (2016). More importantly, however, Judge Cardoza conducted new, full evidentiary hearings on, *inter alia*, the issue of injunctive relief, making clear that it was A&B's burden to prove that the previously-issued form of temporary injunctive relief should remain in place, as well as A&B's burden to prove that it was entitled to further injunctive relief. See Fujimoto v. Au, 95 Hawai'i 116, 164, 19 P.3d 699, 747 (2001) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands. The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner." (internal citations omitted) (quoting Bank of Hawai'i v. Kunimoto, 91 Hawai'i 372, 388, 984 P.2d 1198, 1214 (1999))). Accordingly, we conclude that Judge Loo's temporary restraining order, which by its own terms expired no later than ten (10) days after its entry, did not adversely affect Armitage's substantial rights and did not constitute reversible error.

(2) Armitage contends that Judge Loo abused her discretion when she granted A&B's request for an injunction after recusing herself due to a conflict of interest. Judge Loo held no hearing and made no ruling after she disqualified herself from

6

presiding in this case. Thus, Armitage's contention is without merit.

(3) Armitage contends that Judge Loo erred in entering a ruling favorable to A&B despite her pecuniary interest in A&B. As discussed above, we conclude that Judge Loo's pre-disqualification rulings did not adversely affect Armitage's substantial rights and did not constitute reversible error.

(4) Armitage contends that Judge Cardoza committed reversible error when he failed to "certify familiarity" with the underlying action in accordance with HRCP Rule 63 before accepting the assignment. This contention is also without merit.

The case was assigned to Judge Cardoza on September 2, 2014. At the first hearing before Judge Cardoza, which was held on September 5, 2014, the judge made clear that he would not consider any prior testimony and that A&B had the burden to present testimony to him -- even if it had been previously presented to another judge -- that demonstrated A&B's entitlement to relief. Judge Cardoza subsequently conducted numerous hearings to allow both sides to newly present their witnesses and arguments. Thus, Judge Cardoza did not render a decision or enter judgment based on testimony presented to a predecessor judge. Accordingly, we conclude that Judge Cardoza did not violate HRCP Rule 63.

(5) Armitage contends that the circuit court abused its discretion when it refused to allow Armitage to challenge the validity of A&B's evidence regarding the ownership of Royal Patent Grant 165. Armitage appears to contend that, during the September 5, 2014 morning evidentiary hearing, the circuit court erred in refusing to allow Armitage to testify about the existence of Royal Patent Grant 165 while Armitage was cross-examining A&B's witness and in refusing to grant Armitage's corresponding oral motion to dismiss the case (brought during the same cross-examination).

7

Preliminary injunctions generally require an evidentiary hearing (and the evidence presented becomes part of any future trial record) and the evidence presented in that hearing is distinct from any arguments the parties make about how the court should view or interpret those facts.  See HRCP Rule 65(a).[2]  Hawaii Rules of Evidence (HRE) Rule 611 (2016) vests discretion in the trial court to control the conduct of the proceedings before it, including "the mode and order of interrogating witnesses and presenting evidence."  This is consonant with the court's "inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them."  Doe v. Doe, 98 Hawaiʻi 144, 154-55, 44 P.3d 1085, 1095-96 (2002) (quoting Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawaiʻi 494, 507, 880 P.2d 169, 182 (1994)).

At the September 5, 2014 hearing, throughout Armitage's cross-examination of A&B's first witness, including during the discussion of Royal Patent Grant 165, the circuit court repeatedly reminded Armitage to limit himself to asking questions instead of making arguments.  Armitage argued that he could not ask questions without providing the court with additional context and rested.

---

[2]     HRCP Rule 65(a) provides:

(a) Preliminary injunction.

(1) NOTICE. No preliminary injunction shall be issued without notice to the adverse party.

(2) CONSOLIDATION OF HEARING WITH TRIAL ON MERITS. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

On September 19, 2014, when it was Armitage's turn to present evidence, Armitage requested additional time to prepare. The hearing was continued to September 22, 2014, when Armitage again requested additional time to prepare, and the circuit court granted a four-week extension. When the hearing reconvened on October 27, 2014, the circuit court again informed Armitage that it was time to present evidence and that there would be time to present arguments. Armitage did not call any witnesses or introduce any exhibits and rested the case. The circuit court then heard oral closing arguments from both parties and accepted written versions of closing arguments from both parties.

On this record, we conclude that the circuit court did not refuse to allow Armitage to challenge the validity of A&B's evidence regarding the ownership of Royal Patent Grant 165.

(6) Armitage contends that the circuit court committed reversible error when it granted A&B's motion for summary judgment because A&B failed to meet its burden of proof regarding ownership of the contested properties. Specifically, Armitage appears to contend that A&B attempted to purposefully deceive the court when it submitted a copy of a document entitled "Royal Patent No. 165" as proof that its chain of title began with "Royal Patent Grant No. 165" and thus committed fraud upon the court. Armitage argues that A&B did not establish title sufficiently to merit summary judgment because A&B did not enter into evidence a copy of a "Royal Patent Grant No. 165," on which its claim is purportedly based. Armitage also claims his own right to "Royal Patent No. 165" is superior to that of A&B.

We review

the circuit court's grant or denial of summary judgment *de novo*. Accordingly, on appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

9

> show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

Kawashima v. State, 140 Hawai'i 139, 148, 398 P.3d 728, 737 (2017) (block quote format altered) (internal quotation marks, brackets, and citations omitted). In reviewing a circuit court's grant or denial of a motion for summary judgment, the appellate court "must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." Crichfield v. Grand Wailea Co., 93 Hawai'i 477, 483, 6 P.3d 349, 355 (2000) (internal quotation marks, brackets, and citation omitted).

"Where the title is the issue in an action of trespass it becomes similar to the action of ejectment, and the burden is upon the plaintiff to prove his title." Mew Kung Tung v. Wong Ka Mau, 8 Haw. 557, 559 (Haw. Prov. Gov. 1893). Thus, to be entitled to summary judgment, A&B was required to affirmatively show that there was no genuine issue of material fact as to A&B's title to the land.

> To establish legally cognizable private title to land in the great majority of cases, one must show that he or a predecessor-in-interest acquired a Land Commission Award, a Royal Patent, a Kamehameha Deed, a Grant, a Royal Patent Grant, or other government grant for the land in question. Thurston v. Bishop, 7 Haw. 421 (1888); In re Title of Pa Pelekane, 21 Haw. 175 (1912). Such award or grant can be demonstrated by either the document itself or through the application of the "presumption of a lost grant." In re Title of Kioloku, 25 Haw. 357 (1920); United States v. Fullard-Leo, 331 U.S. 256, 67 S.Ct. 1287, 91 L.Ed. 1474 (1947).

State v. Zimring, 58 Haw. 106, 114, 566 P.2d 725, 731 (1977).

Throughout these proceedings, A&B described its claim of ownership as based on "Royal Patent Grant No. 165." In that regard, A&B submitted title reports and visual aids tracing the history of "Royal Patent Grant No. 165" and adduced expert witness testimony on the history of "Royal Patent Grant No. 165." However, none of the documents A&B submitted into evidence expressly refer to a document entitled "Royal Patent Grant No. 165." Rather, A&B appears to reference a document entitled

"Royal Patent No. 165," which was submitted by A&B as Exhibit P-41.

Armitage appears to challenge A&B's submission of the document entitled "Royal Patent No. 165" as evidence of the purported "Royal Patent Grant No. 165." We thus examine the distinction between a "Royal Patent" and a "Royal Patent Grant" in the context of the history of Hawaii's land system.

Under the traditional ancient Hawaiian land system, islands were divided into tracts called ahupua'a, some of which were further divided into subdivisions called 'ili. Territory v. Bishop Trust Co., 41 Haw. 358, 361-62 (Haw. Terr. 1956). The 'ili were administered by konohiki, the agent to the superior chief holding the ahupua'a. Jon J. Chinen, The Great Mahele: Hawaii's Land Division of 1848 4 (1958).

> Responding to pressure exerted by foreign residents who sought fee title to land, and goaded by the recognition that the traditional system could not long endure, King Kamehameha III undertook a reformation of the traditional system of land tenure by instituting a regime of private title in the 1840's. In adopting a system under which individuals could hold title to land, the public domain, which theretofore had been all-encompassing, necessarily was diminished.

State v. Zimring, 58 Haw. 106, 111, 566 P.2d 725, 729 (1977).

In 1845, the Board of Commissioners to Quiet Land Title (Land Commission) was established "to investigate and settle all land claims of private individuals, whether native or foreign." Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 247, 172 P.3d 983, 991 (2007) (internal quotation marks omitted) (quoting Makila Land Co., LLC v. Kapu, 114 Hawai'i 56, 58, 156 P.3d 482, 484 (App. 2006)). The Land Commission was given the power to issue Land Commission Awards upon confirmation of a claim. Zimring, 58 Haw. at 111, 566 P.2d at 730. "Except for the government's right of commutation, a Land Commission Award gave complete title to the lands confirmed." Chinen, supra, at 13. The Minister of Interior was authorized to issue "Royal Patents" upon the issuance of a Land Commission Award and payment of

11

commutation by the awardee to the government. <u>Zimring</u>, 58 Haw. at 111, 566 P.2d at 730. A "Royal Patent" issued upon a Land Commission Award was essentially a quitclaim of the government's interest in the land and did not confer or confirm title. <u>Mist v. Kawelo</u>, 11 Haw. 587, 589 (Haw. Terr. 1898).

"In 1847, the King together with the Privy Council determined that a land mahele, or division was necessary for the prosperity of the Kingdom." <u>Zimring</u>, 58 Haw. at 112, 566 P.2d at 730. The Great Mahele began in 1848. <u>Id.</u> During the Great Mahele, the King entered into reciprocal quitclaim agreements with chiefs and konohiki to settle their interests in the lands. <u>Id.</u> The agreements did not convey title and chiefs and konohiki were still required to present claims to the Land Commission for formal Land Commission Awards and to obtain a Royal Patent by the Minister of Interior. <u>Id.</u>; Chinen, <u>supra</u>, at 21.

After the Mahele agreements were completed, King Kamehameha III further divided the remaining lands between the King and the Government. <u>Zimring</u>, 58 Haw. at 112, 566 P.2d at 730. The King designated a portion for himself and his heirs, which became known as "Crown Lands." <u>Id.</u> at 113, 566 P.2d at 730. The other portion was given "to the chiefs and people," which became known as "Government Lands." Chinen, <u>supra</u>, at 26.

> Following the division of the lands into Crown, Government, and Konohiki Lands, from time to time portions of the Government Lands were sold as a means of obtaining revenue to meet the increasing costs of the Government. Purchasers of these lands were issued documents called "Grants" or "Royal Patent Grants." These differed from the Royal Patents issued upon Land Commission Awards. It was not necessary for the recipients of the Royal Patent Grants to obtain an award for their land from the Land Commission.

<u>Id.</u> at 27, 29.

> In this case, Exhibit P-41 provides:

> Kamehameha III, By the grace of God, King of the Hawaiian Islands, by this his Royal Patent, makes known unto all men, that he has for himself and his successors in office, this day <u>granted and given, absolutely, in Fee Simple</u> unto M. Kekuanaoa [as guardian of Victoria Kamamalu], his faithful and loyally disposed subject <u>for the consideration of One Dollar, paid</u> into the Royal Exchequer, all that certain piece of Land, situated at Haiku, in the Island of Maui

12

> . . . Containing 567 Acres, more or less: excepting and reserving to the Hawaiian Government, all mineral or metallic Mines of every description.
> To have and to hold the above _granted_ Land in Fee Simple, unto the said M. Kekuanaoa, his Hawaiian Heirs and Assigns forever, subject to the taxes to be from time to time imposed by the Legislative Council equally, upon all landed Property held in Fee Simple.

(Emphases added.) By its terms, the document is a "Grant" or "Royal Patent Grant" obtained through purchase of government lands. Exhibit P-41 contains no reference to the Land Commission nor any confirmation or award by the Land Commission. Despite its title, the document is not a "Royal Patent" issued upon Land Commission Awards.[3] Armitage's challenge to A&B's reliance on Exhibit P-41 as evidence of "Royal Patent Grant No. 165" is therefore without merit.

Furthermore, A&B additionally submitted various deeds and conveyances establishing an unbroken chain of title. On this record, we conclude that A&B established prima facie evidence that it holds title to the subject property originating from "Royal Patent Grant No. 165," and Armitage presented no evidence to the contrary.

Armitage also contends that his own right to "Royal Patent Grant No. 165" is superior to that of A&B and sufficient to defeat the motion for summary judgment. Specifically, Armitage contends that the heirs of the original patentee have superior title to A&B.[4]

Armitage states that a Royal Patent Grant issued, as here, to the patentee and their "Heirs and Assigns forever, . . .

---

[3]     In his book, The Great Mahele: Hawaii's Land Division of 1848, Chinen discusses both the issuance of "Royal Patents" upon Land Commission Awards, Chinen, _supra_, at 8-24, as well as the issuance of "Royal Patent Grants" for the sale of government lands, clarifying the difference between the two documents, id. at 27-29. In doing so, Chinen included a photocopy image of an example of each document. Id. at 22, 28. Notably, the example of the "Royal Patent Grant" is entitled "Royal Patent" at the top of the document. Id. at 28. Furthermore, the language contained in the example of the "Royal Patent Grant" is identical to the language in Exhibit P-41. Id.

[4]     We note that Armitage does not argue that he is an heir to the original patentee. Rather, he argues that the subject property is land that belongs to Native Hawaiians and the Kingdom of Hawai'i.

13

in Fee Simple" is a tenancy-in-common and thus its alienability is limited to the granting of life estates--ownership reverting to the heirs of the original patentee at the end of the life estate. Thus, Armitage contends, the initial deeds granted by the original patentee only conveyed a life estate, and ownership of the contested parcels returned to the heirs of the original patentee, instead of the chain of title continuing to A&B.

This contention is without merit. Armitage, relying on Wailuku Sugar Co. v. Parke, 4 Haw. 89, 92 (Haw. Kingdom 1877),[5] is correct that a party with a life estate interest in a property may only transfer up to a life estate interest in that property to another party, and the transferor may not transfer a fee simple interest in the property to another party because the transferor does not own a fee simple interest in the property. However, as held by the Supreme Court of the Kingdom of Hawaiʻi, "[i]t was clearly the intention of the King and Government in the use of the word 'heirs' in royal patents to give an estate in fee simple to the patentee, and it was introduced to define the character of the estate in the patentee." Thurston v. Allen, 8 Haw. 392, 402 (Haw. Kingdom 1892); see generally Omerod, 116 Hawaiʻi at 246-48, 172 P.3d at 990-92. Thurston distinguished this meaning of the language in a Royal Patent from similar language in a will where there was a manifestly different intention: constructing the phrase "to A and his heirs" to mean granting of only a life estate to A, and upon A's death, a fee simple estate in A's heirs, if that were the testator's intention in forming the will. See Thurston, 8 Haw. at 399-402. Thus,

---

[5] To the extent that Armitage's argument relies on Hawaiian Kingdom Law and an assertion that the circuit court does not have jurisdiction in this matter, "[t]his court has repeatedly held that claims involving the applicability of the Kingdom of Hawaiʻi laws are without merit." State ex rel. Dep't. of Hawaiian Home Lands v. Kawaʻauhau, No. CAAP-12-0000364, 2012 WL 5971176, at *1 (Haw. App. Nov. 29, 2012) (SDO). "The sovereignty of the State and its lawful jurisdiction over the inhabitants of the State is a matter of law that is well-established." State v. Kaluau, No. 30460, 2011 WL 3805761, at *1 (Haw. App. Aug. 29, 2011) (SDO) (citing State v. Fergerstrom, 106 Hawaiʻi 43, 55, 101 P.3d 652, 664 (App. 2004)).

Royal Patent Grant No. 165, under both Hawaiian Kingdom Law and modern jurisprudence, through the language "Heirs and Assigns forever, . . . in Fee Simple," created an alienable, fee simple estate in the patentee, M. Kekuanaoa, as guardian of Victoria Kamamalu.

Armitage does not raise a genuine issue of material fact and the circuit court properly granted summary judgment in favor of A&B.[6]

Based on the foregoing, the September 16, 2016 Amended Final Judgment filed in the Circuit Court of the Second Circuit is affirmed.

DATED:  Honolulu, Hawai'i, March 12, 2020.

On the briefs:

Nelson Armitage,
Defendant-Appellant,
Pro Se.

Deborah K. Wright,
Keith D. Kirschbraun,
and Douglas R. Wright,
(Wright & Kirschbraun),
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[6]    We note that Armitage does not challenge on appeal the circuit court's determination that A&B was entitled to summary judgment because A&B had demonstrated superior title via adverse possession.  We therefore do not reach the issue.